IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY LAVELL JENNINGS <br> (BOP Register No. 55384-177), <br><br> Plaintiff, <br><br> V. <br><br> LUPE VALDEZ and DALLAS COUNTY <br> SHERIFF'S DEPARTMENT, <br><br> Defendants. | § § § § § § § § § § § § § | No. 3:18-cv-3220-N-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Rickey Lavell Jennings, a federal prisoner, brings this *pro se* action under 42 U.S.C. § 1983 against former Dallas County Sheriff Lupe Valdez and the Dallas County Sheriff's Department concerning injuries that he received and the resulting medical care that he was provided while he was detained at the Dallas County jail from December 2016 to February 2017. *See* Dkt. No. 3. His action has been referred to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The Court granted Jennings leave to proceed *in forma pauperis* under the Prison Litigation Reform Act. *See* Dkt. Nos. 4 & 5. He has now submitted verified responses to the re-issued screening questionnaire. *See* Dkt. No. 11; *see also* Dkt. Nos. 6, 7, 8, 9, & 10. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should substitute current Dallas County Sheriff Marian Brown for Sheriff Valdez and then dismiss Jennings's claims with prejudice.

## Applicable Background

According to Jennings,

> [b]etween December 2016 and February 2017, I was detained in the Dallas County Lew Sterrit Detention Center. It was during this time frame that [ ] I was in route to court. We were being escorted by Officer Evans of of the Dallas County Detention Center. Ms. Evans and I along with 11 other detainees, entered the elevator. When we boarded the elevator, and just seconds after Ms. Evans pressed the appropriate floor, the elevator began moving upward, slowed, and then stopped before arriving at the selected floor. Seconds later, the elevator began [plummeting] downward at an incredibly fast rate. Unexpectedly, the elevator abruptly stopped falling mid-descent, causing everyone in the elevator to lose their footing. This is also when I felt my back suddenly pop or crack. We remained trapped in the elevator for sometime. Once the doors were finally opened, we were immediately taken to the medical department. I immediately explained to the medical staff assessing me of the pain and the feeling I experienced inside of the elevator when we stopped falling suddenly. He explained that because of my weight (440 Lbs), when the elevator stopped suddenly my back may have jammed in the process, possibly causing severe and irreversible injury. Lupe Valdez, Sheriff of Dallas County Sheriffs Department at the time, neglected to take the appropriate measures to ensure my safe transport from the jail to court. My back may possibly be damaged for the rest of my life which may impede my ability to function normally or to work certain employment. It is the responsibility of Lupe Valdez and her staff to ensure the safety of the inmates. In this respect, Lupe Valdez has failed miserably.

Dkt. No. 3 at 4-5; *see id.* at 6 (requesting $10 million for damages and pain and suffering).

Jennings asserts that the Dallas County Sheriff is liable because she has

> arbitrarily instituted or constructively authorized a practice that allows or encourages the officers under her direct authority to exceed the maximum occupancy level of the elevators, which consequently resulted in my pain and suffering. State and manufacturer policy posted outside of the elevator stipulates that the elevator occupancy should not exceed 10 people. But it has become customary for the Sheriff and her staff to make every attempt to cram as many people into the elevator as possible

> so that they are not required to take multiple trips and to reduce the amount of time required to move the prisoners from the jail to the courts. Sheriff Valdez's immunity has legal limits, which she has advised or allowed her subordinates to consistently breach. In this instance, Sheriff Valdez exceeded her official capacity by authorizing, condoning, or encouraging her officers to violate the 10-person maximum occupancy level. She has allowed, advised, directed, or encouraged her staff to violate policy and state regulations regarding elevator occupancy. Inasmuch, she is liable. The officers have acted under her authority in violation of the law and the posted safety regulation in their unprofessional attempt to save time and minimize the amount of work that would otherwise be required. I have personally witnessed and been subject to a number of occasions when we, meaning detainees, have been crammed into the elevator like corralled cattle. I've been inside of the elevator when there were 12 or 13 people uncomfortably crammed into the elevator, and the Sheriff was aware yet she did not correct her subordinates of their wrongdoing as is one of the primary directives of anyone in a supervisory and advisory position. On the day of the incident, her disregard for policy and procedure, and state and manufacturer regulations resulted in the elevator falling suddenly, and now I may suffer for the rest of my life. Immunity stops where her negligence, complicity, and arbitrariness regarding the number of people that may occupy the elevator, regardless of the law or posted policy stipulated, begins. It is her neglect that has now resulted in my injury. She is liable because her decisions and failure to properly perform her duty has caused the suffering that is the subject of this claim.

Dkt. No. 11 at 2.

And Jennings further states that his medical-care claim amounts to a constitutional violation because

> [t]he Dallas County Jail limited my treatment following the elevator crash to the staff of its health services department. One of the employees performed a cursory check by hand to determine the extent of my pain and suffering. I was simply asked to raise my hands and perform a couple of functions. Upon this review, the employee expressed that it was believed that I had been hurt by the fall, and prescribed medication. I weigh more than 350 pounds. The elevator fell suddenly and then stopped suddenly. My weight was forced downward onto my legs and back. Raising my arms in the air and bending over a few times could not accurately determine the extent of my injury, let alone the depth of my

> pain and suffering. Following this novel assessment, I was refused any further treatment. Meanwhile, my injury has only worsened. Better care was not merely necessary, it should have been a requirement under the circumstances. Inasmuch, the staff acted with deliberate indifference to a substantial risk of serious and more aggravated harm by failing to provide me further treatment because they felt as if what they had done was sufficient. Today, the pain I suffer is practically unbearable. I am not able to sleep well. I do not have the same degree of mobility that I previously had. And it is increasingly more difficult for me to walk without suffering an excruciating amount of pain.

*Id.* at 3.

## Legal Standards

Where a prisoner – whether he is incarcerated or detained prior to trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1); *see also* 28 U.S.C. § 1915(e)(2)(B).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have

"substantive plausibility" by stating "simply, concisely, and directly events" that he contends entitle him to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (a court need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); citation omitted)).

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

Although a court may take notice of documents in the public record – it generally cannot look beyond the pleadings – to determine whether claims should be dismissed. But the pleadings here include the verified responses to the Court's screening questionnaire [Dkt. No. 11]. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)). Through the use of

questionnaires – approved "to aid in the determination of whether a complaint [filed *in forma pauperis*] is frivolous" – a court is able to "'focus[] precisely on [the] factual allegations, puncturing the conclusion balloon in which they may at first be lodged.'" *Id.* (quoting *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985)).

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded [his] 'best case.' A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint. [And a] plaintiff may indicate [he] has not pleaded [his] best case by stating material facts that [he] would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal quotation marks omitted).

## Analysis

For the reasons explained below, the Court should dismiss Jennings's deliberate indifference claims as asserted against the current Dallas County Sheriff and her department. And, because the Court offered Jennings an opportunity to amend those claims through his verified questionnaire responses, after apprising him of critical deficiencies in his allegations, the Court should dismiss this action with prejudice. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an

acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

I.    Substitution

First, the allegations in Jennings's complaint as amended and the course of this proceeding both demonstrate that he has sued Sheriff Valdez in her official capacity only. *See Robinson v. Hunt Cnty., Tex.*, ___ F.3d ___, No. 18-10238, 2019 WL 1594319, at *2 (5th Cir. Apr. 15, 2019) ("'A person's capacity need not be pled except to the extent required to show the jurisdiction of the court.' ... To determine whether a defendant is being sued in his or her official or individual capacity, [a court should] examine 'the allegations in the complaint,' and 'the course of proceedings.'" (quoting, respectively, *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); original brackets omitted)). The Court should therefore substitute current Dallas County Sheriff Marian Brown for Sheriff Valdez, the sheriff at the time of Jennings's alleged injuries. *See* FED. R. CIV. P. 25(d); *see also King v. McMillan*, 594 F.3d 301, 309-10 (4th Cir. 2010) ("[T]he official capacity claim continues in the name of Sheriff Johnson .... Rule 25(d) thus protects the public employee who may need more than the original ... defendant's term of office to litigate her official capacity claim.").

II.    Deliberate Indifference

"[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Through the procedural and substantive due process

guarantees of the Fourteenth Amendment, then, "the deliberate indifference standard articulated … in *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994), applies to pretrial detainees." *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)).

Both Jennings's elevator-over-capacity and medical claims fall under this, "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see, e.g., Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).

To state a constitutional claim, Jennings must allege that jail officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992))). "And, the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838).

### A. Elevator

"A municipality and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom … by those whose edicts or acts may fairly

be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). A policy is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003).

*James*, 577 F.3d at 617.

Liberally construed, the official policy that Jennings identifies is the Dallas County jail's allegedly widespread practice of exceeding the stated capacity for loading elevators when transporting detainees. *See* Dkt. No. 11 at 2. But his amended

-9-

complaint fails to plausibly allege that this claimed policy is either "facially unconstitutional" or "was adopted with deliberate indifference as to its known or obvious consequences." *James*, 577 F.3d at 617 (quoting *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004); citing *Piotrowski*, 237 F.3d at 579; internal quotation marks omitted). That is, Jennings has not, at a minimum, plausibly alleged that the claimed policy amounts to "an intentional choice, not merely an unintentionally negligent oversight." *Rhyne*, 973 F.2d at 392 (citations omitted).

In a context related to the transport of detainees in jail elevators, "[m]any courts ... have held that there is no constitutional right of a prisoner to the use of a seatbelt while being transported, and that while failure to seatbelt a prisoner may give rise to a claim for negligence, it does not give rise to a cognizable constitutional claim." *Walls v. Kaho*, No. 5:06cv188-MTP, 2009 WL 901917, at *2 (S.D. Miss. Mar. 31, 2009) (collecting cases); *see also Johnson v. Hunt Cnty. Jail*, No. 3:08-cv-1876-P, 2009 WL 192891, at *2 (N.D. Tex. Jan. 27, 2009) ("The gravamen of plaintiff's complaint is that the driver of the transport vehicle was negligent for running a stop sign and for not fastening plaintiff's seat belt. However, such a claim sounds in negligence and is not actionable under 42 U.S.C. § 1983." (citations omitted)).

### B. Medical Claim

Jennings's medical care allegations fare no better.

First, he has not alleged a plausible *Monell* claim against the Sheriff. The only policy Jennings identifies relates to exceeding the stated capacity for elevator loads.

This policy in no way relates to – much less is the alleged "moving force behind" – a constitutional violation based on the medical care he received at the jail. *Peterson*, 588 F.3d at 847; *see Williams v. Town of Southington*, 205 F.3d 1327 (table), 2000 WL 232054, at *2 (2d Cir. 2000) (per curiam) ("A plaintiff 'must first prove the existence of a municipal policy or custom' that caused her injuries, and must establish a causal connection between the policy and the alleged civil rights violation." (citation omitted)); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" (citation omitted)).

And Jennings alleges no more than negligence as to his medical care, which he admits commenced immediately. *See* Dkt. No. 3 at 4 ("Once the doors were finally opened, we were immediately taken to the medical department."). A disagreement with medical treatment, or a failure to provide additional medical treatment, alone, does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish a constitutional violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

His failure to state a constitutional claim based on his medical care at the jail further prevents a claim against the Sheriff based on that care. *See Salazar-Limon*, 826 F.3d at 279 ("Because Salazar has not shown a violation of his constitutional rights

... all of his *Monell* claims against the City of Houston fail as a matter of law." (citation omitted)).

III.  Sheriff's Department

Defendant Dallas County Sheriff's Department should also be dismissed for a separate reason. A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the United States Court of Appeals for the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. Relying on *Darby*, another judge of this Court has held that "the Dallas County Sheriff's Office," as well as the Dallas County jail, "are non-jural entities under § 1983." *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (collecting cases).

**Recommendation**

The Court should substitute Sheriff Brown for Sheriff Valdez and then dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 29, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE